IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JOSE RAMON VALERO, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 122-148 |
| | ) | (Formerly CR 121-013) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. Petitioner raises four grounds for relief, including a claim trial counsel failed to file a notice of appeal when directed to do so. The Court appointed attorney John E. Price to represent Petitioner at an evidentiary hearing on this "lost appeal" claim. Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** Respondent's motions to dismiss be **DENIED AS MOOT**, (doc. nos. 5, 10), the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice as to all other claims, the judgment in Petitioner's underlying criminal cases be **VACATED**, an identical sentence be **RE-IMPOSED**, and this civil action be **CLOSED**.

I.   **BACKGROUND**

   A.   **Proceedings in CR 121-013**

On February 3, 2021, the grand jury in the Southern District of Georgia charged Petitioner in a six-count indictment. United States v. Valero, CR 121-013, doc. no. 3 (S.D.

Ga. Feb. 03, 2021) (hereinafter "CR 121-013").  Petitioner retained attorney Christopher Troy Clark.  Id., doc. no. 22.

A superseding indictment was issued on May 6, 2021, charging:  conspiracy to distribute marijuana (Count One), possession with intent to distribute marijuana (Counts Two and Three), possession of a firearm in furtherance of a drug trafficking crime (Counts Four and Five), possession of a firearm by a prohibited person (Counts Six through Nine), and making a false statement during purchase of a firearm (Count Ten).  Id., doc. no. 38.  Count One carried a possible statutory sentence of not more than twenty years imprisonment, Counts Two and Three carried possible statutory sentences of not more than five years imprisonment, Counts Four and Five carried a possible sentence of not less than five years nor more than life imprisonment consecutive to any other sentence imposed, Counts Six through Nine carried a possible statutory sentence of not more than ten years imprisonment each, and Count Ten carried a possible statutory sentence of not more than five years.  Id., doc. no. 40.

On January 06, 2022, Petitioner appeared with Mr. Clark to enter a guilty plea.  Id., doc. nos. 64-66.  As set forth in the Plea Agreement, Petitioner agreed to plead guilty to Counts One and Four.  Id., doc. no. 66, p. 1.  In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner; (2) not object to a recommendation for a two-point acceptance of responsibility reduction; (3) stipulate as to the quantity of drugs; and (4) recommend Petitioner be sentenced to the low end of the advisory guidelines range.  Id. at 5.

With his signature on the Plea Agreement, Petitioner agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing

Guidelines range, or (3) the government appealed the sentence. Id. at 9. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. at 9-10.

Chief United States District Judge J. Randal Hall accepted the plea agreement on January 6, 2022. Id., doc. no. 64-66. At sentencing on May 26, 2023, Judge Hall imposed a term of imprisonment at the bottom of the Guidelines range, eighty-four months—twenty-four months for Count One, and sixty months for Count Four. Id., doc. no. 92, p. 62. Petitioner did not file a direct appeal. Counsel submitted a post-conviction consultation certification on June 1, 2022, signed by Mr. Clark on behalf of Petitioner with express permission stating Mr. Clark had advised Petitioner of his right to appeal and Petitioner decided not to appeal. Id., doc. no. 86.

B.   § 2255 Proceedings

Petitioner raises several claims in his November 18, 2022 § 2255 motion and March 10, 2023 supplement:

(1)   Counsel was ineffective by failing to file an appeal after Petitioner requested he do so;

(2)   Counsel was ineffective by failing to pursue a mental health evaluation of Petitioner;

(3)   Counsel was ineffective for not having the drug evidence tested;

(4)   Counsel was ineffective for "fundamental cumulative errors";

(5)   The government misled the Court about Petitioner possessing guns prior to his offense;

(6)   The District Court lacked jurisdiction over his case;

3

(7) The search leading to his arrest was illegal;

(8) Counsel was ineffective for having a conflict of interest while serving as an Assistant United States Attorney at the same time he represented Petitioner; and

(9) Petitioner's sentence was improperly enhanced for a misdemeanor charge that was later expunged.

(See doc. nos. 1, 9.) Respondent moved to dismiss both the motion and supplement. (See doc. nos. 5, 10.) The Court appointed Mr. Price to represent Petitioner, and on July 10, 2023, the Court held an evidentiary hearing on Ground One. (See doc. nos. 20, 29.)

### 1.   Petitioner's Evidence and Testimony Regarding Lost Appeal Claim

As originally presented in Ground One of the § 2255 motion, Petitioner asserts he told Mr. Clark he wanted to appeal immediately following the May 26th sentencing. (Doc. no. 1, pp. 9-10, 19.) Specifically, Petitioner wanted to appeal his sentence on several grounds, including: the substance which he was dealing was not legally marijuana, he was mentally incapable of taking a plea agreement without first having been evaluated by a doctor, and the firearm sentence was overly enhanced because his possession of the firearm was legal. (Id. at 2-3.)

With his response to the motion to dismiss, Petitioner submitted three letters from his sister and mother as well as his own statement explaining Petitioner told Mr. Clark he wanted to file an appeal after sentencing on May 26th. (See doc. no. 13, pp. 2-6; doc. no. 14-1, pp. 7-8.) Mr. Clark responded he was no longer Petitioner's attorney and he would only file an appeal if Petitioner paid him $15,000. (Id.) Petitioner and his family called Mr. Clark on May 27th and 28th to again ask him to file an appeal, and Mr. Clark responded the same. (Id.) Petitioner also claimed he never gave Mr. Clark permission to sign the post-conviction

4

consultation certification, which stated Petitioner did not want to file an appeal. (See doc. no. 14-1, pp. 5, 8-9); CR 121-013, doc. no. 86-1.

At the evidentiary hearing, Petitioner testified he requested Mr. Clark to file an appeal multiple times. Court's Recording System, *For the Record* (FTR), 10:42.40-:43.05. In the first instance, immediately after the sentencing hearing at Mr. Clark's office, Petitioner testified he told counsel he wanted to appeal on the basis that the alleged marijuana was actually hemp. FTR 10:44.33-:45.05. Mr. Clark responded along the lines of: "I'm out of private practice right now Mr. Valero, but if I decide to do the appeal for you, it would be $15,000. . . . I'm not your attorney no more, you know, you paid me to represent you, you didn't pay me for an appeal." FTR 10:45.05-46.06. According to Petitioner, he requested Mr. Clark file an appeal at least three times over the next few days: first, on the same day over the phone while the family ate at a Chinese restaurant, and twice over the phone after Petitioner returned to Atlanta awaiting his self-report date. FTR 10:44.45-:45.05; 10:46.31-:47.40; 10:48.14-.57; 10:48.45-.57; 10:53.10-.20. Each time Mr. Clark responded similarly: he declined to file an appeal unless Petitioner submitted payment. FTR 10:47.00-.14; 10:48.05-.35.

During their last phone call in Atlanta, Mr. Clark again conditioned an appeal on payment and warned Petitioner an appeal would breach the plea agreement and could subject him to a greater sentence at one of the worst federal prisons. FTR 10:48.42-:49.26. After their conversation, Mr. Clark texted Petitioner:

> Mr. Clark:   "Jose—just to confirm our conversations over the last few days—you have decided not to file a direct appeal in your case. You are in Atlanta and are having a hard time signing the documents electronically, so you are giving me permission to sign the [post-conviction consultation] certification form on your behalf. Is that correct?"

5

> Petitioner:   "Yes that's correct I give you permission to sign on my behalf. Sign – Jose Ramon Valero Jr."

(Doc. no. 31, Ex. 2.)  At the hearing, Petitioner explained this text exchange:

> Petitioner:   "I texted him back, 'I, Jose Valero, you know, don't wanna appeal.'  But that was not upon my free will at all, I just did it because I was scared.  I didn't want to go to federal prison for thirty years, or go for life. I don't wanna piss the government off . . . . breach my contract.  You know, I just did it cause I was scared . . . . it was never something that I wanted to do because I wanted to appeal."

FTR 10:49:22-10:50.00; 10:53.39-54.00.

Petitioner claims he had never seen the post-conviction consultation certification form before he agreed to allow Mr. Clark to sign on his behalf; he did not know what Mr. Clark was signing for him.  FTR 10:51.00-.22.  Petitioner testified Mr. Clark never explained his right to file an appeal with Mr. Clark's assistance free of charge and regardless of merit nor the deadline to file an appeal.  FTR 10:51:30-52.49.

### 2.   Testimony of Petitioner's Witnesses

Two witnesses appeared on Petitioner's behalf:  Josette Valero, Petitioner's mother, and Racquel Eagle, Petitioner's sister.  Both witnesses testified they participated in at least three discussions wherein Mr. Clark said he would not file an appeal, but if he chose to do so he would charge a $15,000 fee.  FTR 10:08.15-:10.10; 10:11.10-:11.45; 10:12.00-12.58; 10:28.20-:32.55.  Neither witness had seen Petitioner's texts prior to the hearing.

### 3.   Mr. Clark's Testimony

Mr. Clark unequivocally testified Petitioner never instructed him to file an appeal at any point. Mr. Clark recalled speaking with Petitioner and his family immediately following sentencing, but testified Petitioner made no decision about an appeal at that time.  FTR

6

11:52.43-:54.18; 11:54.45-:55.20. Mr. Clark testified to several hours' worth of conversations with Petitioner regarding the possibility of appeal, its merits, and the timeline to file; these conversations took place in the days after sentencing and culminated in Petitioner's ultimate decision to seek clemency rather than pursuing a direct appeal. FTR 11:55.20-57.51, 11:58.18-.51.

Mr. Clark could not remember if he provided Petitioner a copy of the post-conviction consultation certification, but he testified his standard practice is to read the certification's language aloud to clients:

> Respondent: "Did you send Mr. Valero a post-conviction consultation certificate to sign regarding his decision not to file an appeal?"
>
> Mr. Clark: "I don't remember if I sent it to him or gave it to him, but I believe that he did have a copy. It's always my standard to read it as well to everyone."
>
> Respondent: "Okay. To read the language over the phone to Mr. Valero?"
>
> Mr. Clark: "Yes."

FTR 12:00.00-.51. When cross-examined, Mr. Clark elaborated:

> Mr. Price: "I believe you told us earlier you're not sure whether you actually gave Jose a copy of the post-conviction consultation form?"
>
> Mr. Clark: "I don't remember when I did. It's my standard practice to, I mean this was over a year ago now, so I can't tell you now when I gave it to him. It's my standard practice to give clients that and read it to them in cases like this . . . ."

FTR 12:16:04-.39 Mr. Clark signed the certification declining an appeal on Petitioner's behalf with express permission given via text message because Petitioner was in Atlanta. FTR 12:01.08-.45; 12:03.05-.56.

7

Mr. Clark denied telling Petitioner and his family that he would charge any specific price to represent Petitioner for an appeal, but Mr. Clark did testify he conveyed to Petitioner an appeal would cost some amount of money. FTR 12:10.51-:11.02; 12:22.00-23.41, 12:25.24-:26.10. The Court confirmed Mr. Clark's testimony:

> The Court:  "I think what I hear you saying now is: 'I never quoted him a price for filing a substantive brief on appeal, but I did tell him he'd have to pay me more because the original payment and the terms of our original retention did not include filing a substantive brief on appeal.'"
>
> Mr. Clark:  "Correct."

FTR 12:26.10-.37. The Court then referenced the notice to retained counsel, which stipulated that retained counsel is obligated to represent the client through direct appeal, and questioned Mr. Clark on the difference between his obligation per Court instruction and the terms of his retention. FTR 12:17.04-:28.30. Mr. Clark explained that the retention agreement was standard for his practice, leading the Court to clarify:

> The Court:  "Well, see, I'm talking about tension that exists between your – the term of your retention, and the notice to retained counsel and this discussion of retained counsel's obligations on appeal, right? There is some tension there, you'd agree?"
>
> Mr. Clark:  "Yes."
>
> The Court:  "So I'm just saying, certainly we've established that you've talked with him about the terms of your retention agreement, and what it says about your obligations on appeal. But did you also talk with him about what the court has told you your obligations are?"
>
> Mr. Clark:  "I told him that, you know, the notice would be filed, it is his decision whether to file an appeal or not, and we did not discuss money in any specific terms. And I do not recall telling him that ultimately, if he didn't pay, then I would follow through with that appeal. I do not believe I told him that. I will say I think the

|  |  |
|---|---|
|  | record in this case indicates I went as far as I could for Mr. Valero . . . . I do not let money stand in the way of serving my clients." |
| . . . . |  |
| The Court: | "I want to make sure you agree, is that you certainly discussed with him the scope of your representation and obligations on appeal as presented in the retention agreement that you have with him, but you did not discuss with him the scope of those appellate obligations as detailed in the notice to retained counsel." |
| Mr. Clark: | "That would be correct, your honor, at least as far as I can remember." |

FTR 12:28.30-30.55.

## II. DISCUSSION

### A. Petitioner is Entitled to an Out of Time Appeal

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*); see also Roe v. Flores-Ortega, 528 U.S. 470, 476-77 (2000) (holding that Strickland test applies to ineffective assistance claim alleging failure to file an appeal). Petitioner must show that counsel was constitutionally ineffective under the two prongs of Strickland by proving defense counsel's performance was deficient and prejudicial. Under the first prong, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Under the prejudice prong of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. As explained below, Petitioner has carried his burden of proof with respect to both prongs because Mr. Clark failed to adequately

explain Petitioner's appellate rights, and there is a reasonable probability Petitioner would have decided to file an appeal had he known his rights.

All defense counsel have a general duty to consult about an appeal, including informing a client about the right to appeal, advising the client about the advantages and disadvantages of taking an appeal, and making a reasonable effort to determine whether the client wishes to pursue an appeal. Thompson v. United States, 504 F.3d 1203, 1206 (11th Cir. 2007). Despite this general duty, the Supreme Court has specifically declined to adopt "a bright-line rule that counsel must always consult with the defendant regarding an appeal." Flores-Ortega, 528 U.S. at 480. Rather, taking into consideration the totality of the circumstances, counsel has a duty to consult regarding an appeal when "there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id.

Here, it is undisputed Petitioner reasonably demonstrated interest in an appeal. Mr. Clark and Petitioner testified as much, though they disagree on Petitioner's ultimate decision. That Petitioner signed a Plea Agreement with an appeal waiver does not mean counsel was automatically relieved of his obligation to consult with Petitioner. See Gomez-Diaz v. United States, 433 F.3d 788, 793 (11th Cir. 2005) (ruling that if counsel failed to fulfill duty to determine client's wishes about appealing, prejudice is presumed and entitles petitioner to an out-of-time appeal, regardless of whether there are meritorious issues fitting exceptions to appeal waiver). The question turns to whether Mr. Clark satisfied his duty to consult. "The question of what constitutes adequate consultation, however, is not one of duration, but of content." Thompson, 504 F.3d at 1207.

Generally, and especially in the Southern District of Georgia, a retained criminal defense attorney who enters an appearance in a criminal case is obligated to continue representing a defendant on appeal. This obligation exists regardless of any contrary terms of retention or whether the defendant has even paid his attorney the agreed fee. See Griffin v. United States, No. CR410-005, 2012 WL 5414489, at *1 (S.D. Ga. Nov. 6, 2012) (granting out-of-time appeal when retained defense counsel failed to appeal because she wrongly believed private retention agreement with defendant ended representation at sentencing), *adopted by* 2012 WL 6102500 (S.D. Ga. Dec. 7, 2012); see also 11th Cir. R. 46–10(a) ("Retained counsel for a criminal defendant has an obligation to continue to represent that defendant until successor counsel either enters an appearance or is appointed under the Criminal Justice Act, and may not abandon or cease representation of a defendant except upon order of the court."); Loc. R. 83.6(e) ("No attorney shall withdraw his appearance in any action or proceeding, either civil or criminal, except by leave of the Court as hereinafter prescribed.").

To memorialize this responsibility, this Court issues a notice to all retained criminal defense attorneys, explaining:

> Retained criminal defense attorneys are expected to make financial arrangements satisfactory to themselves and sufficient to provide for representation of each defendant until the conclusion of the defendant's case. An attorney's appearance on behalf of a party constitutes an affirmative representation of the fulfillment of such expectation. Counsel's withdrawal from a pending case must be approved by a judge of this court. Once an appearance of counsel is made, the court will expect counsel to represent the defendant until the conclusion of the case. Ordinarily, a defendant's failure to pay sums owed for attorney's fees or counsel's failure to collect a sum sufficient to compensate for all services will not constitute good cause for withdrawal. Moreover, counsel are reminded of the DIRECTORY RULES of the State Bar of Georgia as a further explanation of the Canons of Ethics. [See, e.g., DR 2-1100 (C)(2)(f)]. A mere failure to pay an attorney does not amount to a client's deliberate disregard of an obligation to a lawyer as expenses and fees.

> Every defendant has a right to appeal from any conviction; therefore, a convicted defendant's case is not concluded until his direct appeal is decided. Thus, the further expectation of this court and the United States Court of Appeals for the Eleventh Circuit is that retained counsel, in making satisfactory financial arrangements, will contemplate services to be rendered upon appeal.

CR 121-013, doc. no. 25.

Mr. Clark conceded he did not tell Petitioner he was obligated to represent him on appeal regardless of whether Petitioner paid him more money. If Petitioner decided not to appeal, as Mr. Clark claims, his decision was predicated on his incorrect belief that Mr. Clark had no duty to represent him on appeal. As a result, Mr. Clark failed to adequately advise Petitioner of his rights on appeal. See Nelson v. United States, No. 22-21595-CIV, 2023 WL 3304548, at *6 (S.D. Fla. Mar. 10, 2023), (finding inadequate consultation when communications between attorney and defendant "[did] not reflect a meaningful discussion regarding [defendant's] appellate rights, including any discussion on how [defendant] could file his own appeal as the district judge had suggested at sentencing") *adopted by* 2023 WL 2854433 (S.D. Fla. Apr. 10, 2023); see also Thompson, 504 F.3d at 1207 ("This record is clear that no reasonable effort was made to discover [defendant's] *informed* wishes regarding an appeal." (emphasis added)). If Petitioner had been properly consulted, there is a reasonable probability he would have timely appealed. See Flores-Ortega, 528 U.S. at 484; Thompson, 504 F.3d at 1207-08.

### B.  Procedure for Restoring Petitioner's Appellate Rights

When a court determines that an out-of-time appeal in a criminal case is the proper remedy in a § 2255 proceeding, the Eleventh Circuit directs that the remedy should be effected in the following way:

> (1) the criminal judgment from which the out-of-time appeal is to be permitted should be vacated; (2) the same sentence should then be reimposed; (3) upon reimposition of that sentence, the defendant should be advised of all the rights associated with an appeal from any criminal sentence; and (4) the defendant should also be advised that the time for filing a notice of appeal from that re-imposed sentence is [fourteen] days, which is dictated by Rule 4(b)(l )(A)(i).

United States v. Phillips, 225 F.3d 1198, 1201 (11th Cir. 2000); Fed. R. App. P. 4(b)(1)(A)(i). The Court recommends these procedures to re-institute Petitioner's right to appeal. After reimposition of Petitioner's sentence, Petitioner will have fourteen days in which to file a notice of appeal.

During the objection period following issuance of this Report and Recommendation, Petitioner must inform the Court whether on appeal he intends to: (1) proceed *pro se*; (2) retain counsel of his choice; or (3) have counsel appointed under the Criminal Justice Act for his appeal in CR 121-013. In the event Petitioner fails to respond, the Court will presume Petitioner has chosen to proceed with appointed counsel. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation on Petitioner his current place of incarceration.

In light of the recommendation that Petitioner be allowed to file an appeal, the Court declines to address Petitioner's remaining § 2255 claims and recommends that those claims be dismissed without prejudice. See United States v. Wiles, 563 F. App'x 692, 695 (11th Cir. 2014) (*per curiam*).

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motions to dismiss be **DENIED AS MOOT**, (doc. nos. 5, 10), the § 2255 motion be **GRANTED** as to the request for an out-of-time appeal and **DISMISSED** without prejudice

13

as to all other claims, that the judgment in Petitioner's underlying criminal cases be **VACATED**, that an identical sentence be **RE-IMPOSED**, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 1st day of August, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA